UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

REGINA M. ZARRELLI,                    :
                                       :
              Plaintiff,               :
                                       :
v.                                     :    CASE NO. 2:13CV447
                                       :
CITY OF NORFOLK and                    :
HON. GREGORY D. UNDERWOOD              :
                                       :
              Defendants.              :

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Regina M. Zarrelli ("Plaintiff" or "Zarrelli") brings this amended action against Defendants City of Norfolk ("City") and Gregory Underwood ("Underwood") (collectively, "Defendants"), alleging violations of her constitutional due process rights and defamation under Virginia law. (ECF No. 19). Both Defendants moved to dismiss the Amended Complaint and the matter was referred to the undersigned United States Magistrate Judge for a Report and Recommendation. For the reasons set forth in detail below, the undersigned recommends the Court grant both Motions to Dismiss.

## FACTUAL AND PROCEDURAL HISTORY[1]

As set forth in the Amended Complaint and presumed true for purposes of this Motion, Zarrelli was a City-employee assigned

---

[1] As the underlying facts have not significantly changed, the following factual summary is largely adopted from the previously filed Report and Recommendation addressing the City's Motion to Dismiss Zarrelli's original Complaint. (ECF No. 9).

to the Office of the Commonwealth's Attorney for the City of Norfolk. (ECF No. 19 at 14-15). More specifically, since 2005, Zarrelli continually served in that Office's Victim/Witness Assistance Program – first as an Advocate and ultimately as an Assistant Director. Id. at 15. She reportedly served with competence, consistently receiving satisfactory performance reviews. Id. Following a dispute with the Commonwealth's Attorney, Gregory Underwood, however, Zarrelli was dismissed from her position on August 17, 2012. Id. at 17.

Her dismissal was the culmination of a series of events beginning in May 2012. On May 4, Underwood reprimanded Zarrelli for violating office policies regarding travel accommodations for non-local victims and witnesses.[2] Id. at 11, 15-16. Describing Zarrelli's behavior as "counterproductive and undermining," Underwood suspended her without pay for two days, placed her on probation for one year, and required her to draft a letter to the Office's travel vendor explaining the proper policy regarding rental cars while acknowledging her own "inappropriate" conduct. (ECF No. 1-1). Underwood memorialized the substance of this meeting in a written Memorandum dated the

---

[2] Zarrelli allegedly made repeated requests of the Office's travel vendor that a rental car be added to a particular witness' travel itinerary despite the Office's Travel Coordinator's repeated cancellation of the rental and instruction from the Deputy Commonwealth's Attorney that witnesses are separately responsible for this kind of transportation. Zarrelli also challenged the vendor on a $150.00 penalty that had been assessed against the Office, presumably as a result of the continued miscommunication. (ECF No. 1-1).

same day.  Id.

Zarrelli filed a grievance on May 18, 2012, protesting Underwood's proposed disciplinary actions. (ECF No. 1-2). As a "direct and proximate result" of the May 4 meeting, she also went on medically prescribed leave until August 9, 2012. (ECF No. 19 at 16). Upon her return, Underwood allegedly "scolded" Zarrelli about the grievance she filed, and began implementing the disciplinary actions he outlined in the Memorandum.  Id.

On August 17, 2012, Zarrelli drafted the required letter to the travel vendor.  In pertinent part, it reads:

> Per Commonwealth Attorney, Gregory D. Underwood, I have been asked to send you a letter advising you of our office policy regarding rental cars and this is to remind you that we are going to follow that policy.
>
> Although the Office Manager had a question whether I acted inappropriately in questioning you about the cancellation of a rental car, I disagree that I acted inappropriately.
>
> Furthermore, the Office Manager questioned whether I acted appropriately challenging the penalty and fee assessed by CI Travel. I disagree that I acted inappropriately or challenged in that regard as well.
>
> This letter is being sent to you at the direction of my Office Manager and not of my own volition. I trust that we can continue our congenial and professional relationship.

(ECF No. 1-8).  After reviewing the letter, Underwood fired Zarrelli on the same day. (ECF No. 19 at 17).  Zarrelli, in turn, filed another grievance on August 31, 2012, this time disputing her termination.  Id.  Specifically, she alleged that

Underwood terminated her employment after imposing the disciplinary action that was the subject of the pending grievance she filed in May. Id. at 17-18.

On November 7, 2012, the City Manager determined that as a former special project employee assigned to the Office of the Commonwealth's Attorney, Zarrelli's termination was not a grievable issue. (ECF No. 1-11). As permitted by the City of Norfolk Personnel Administrative Policies Manual, Policy Number 8.4(F) and Virginia Code § 15.2-1507(A)(9)(a), Zarrelli appealed to the Norfolk Circuit Court. In a letter opinion dated March 27, 2013, Judge Poston "sustain[ed] the City Manager's determination that the Plaintiff's termination of employment is not a grievable issue." (ECF No. 1-12 at 7).

Zarrelli then filed this lawsuit against the City on August 12, 2013 alleging the two counts listed above - constitutional due process violations and defamation under Virginia law. (ECF No. 1). The City moved to dismiss both counts on September 11, 2013. (ECF No. 4). In a Report and Recommendation issued October 31, 2013, the undersigned recommended granting the Motion to Dismiss. (ECF No. 9). Zarrelli objected to the recommendation and sought leave to amend her Complaint, but did not include an Amended Complaint with her objection. Accordingly, the District Judge entered an Order to Show Cause directing her to submit a proposed Amended Complaint.

4

Thereafter, the Court granted Zarrelli leave to amend her Complaint on February 4, 2014. (ECF Nos. 10, 18). Zarrelli filed her Amended Complaint on the same date alleging identical claims with minimal factual adjustments, this time against both the City and Underwood. (ECF No. 19). Both Defendants moved to dismiss, and Underwood requested oral argument, which the Court heard on May 7, 2014. Defendants' Motions to Dismiss are therefore ripe for judicial review.

**STANDARD OF REVIEW**

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A pleading fails to meet this standard and is subject to dismissal under Rule 12(b)(6) when it does not "contain sufficient factual matter, accepted as true, 'to state a claim that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

"Factual allegations must be enough to raise a right to relief above the speculative level" and beyond the level that is merely conceivable. Twombly, 550 U.S. at 555. Legal

conclusions and "threadbare recitals of the elements of a cause of action" do not state a claim.  Iqbal, 556 U.S. at 678.

The Supreme Court has described the motion to dismiss analysis in two parts.  First, the Court must accept the allegations of fact as true.  Iqbal, 556 U.S. at 678.  However, a court is not required to "accept as true a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986), or a legal conclusion unsupported by factual allegations, Iqbal, 556 U.S. at 678-79.  After reviewing the allegations, the Court must consider whether they are sufficient to state a plausible claim for relief - "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.

A Rule 12(b)(6) motion, then, should be granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief."  Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

## ANALYSIS

As an initial matter, the Report will address the consequence, if any, of the District Judge having sustained an objection to the earlier Report and Recommendation and permitted

Amendment.  Zarrelli claims that this Court's grant of leave to file an Amended Complaint amounted to a rejection of the recommendations in the previous Report and Recommendation or an implicit approval of the claims set forth in the Amended Complaint.  But Zarrelli did not request leave to amend until after entry of the previously filed Report and Recommendation. Moreover, the District Court's Order granted her request to amend largely on the basis that permitting amendment would "not unduly prejudice the Defendant or delay proceedings." (ECF No. 18 at 2).  In a footnote, the Court explicitly recognized the City's arguments that Zarrelli could not state a valid claim could be raised by responsive pleading.  Id. at 3 n.2.

Thus, while Zarrelli is correct that the District Court's Order effectively rendered the previously filed Report and Recommendation "null and void," it did not reject the analysis or precedent relied upon in that document. Zarrelli's Amended Complaint names Underwood as a new party, but asserts the same legal claims with only modest changes to the underlying facts supporting those claims.  Accordingly, as the relevant law remains the same, the analysis set forth in the previously filed Report and Recommendation applies to the Amended Complaint as well.

## I.  <u>Due Process</u>

In her first claim, Zarrelli alleges constitutional due

process violations. As in her original complaint, Zarrelli maintains that she was entitled to a "name clearing" hearing to grieve the improper disciplinary actions taken by Defendants Underwood and the City – specifically, the placement of "false and stigmatizing information in Zarrelli's personnel file that would likely be seen by prospective employers . . . ." (ECF No. 19 at 18-19). Other area employers, she claims, have not offered her an interview as "it is a great likelihood that [D]efendants have communicated false and stigmatizing information" about her professional character. Id. at 20. As she also alleged in her original complaint, Zarrelli further contends that the City deprived her of a property interest without due process by declining to permit her to grieve her termination. She argues the City's unfair categorization of particular employees as "special project employees" with limited grievance rights lacks any rational basis and is arbitrary and capricious.

In response, Defendants maintain that Zarrelli has not pled facts sufficient to state a claim for any due process violation. As a special project employee, she lacked any property interest in her job and as such, was effectively barred from raising any due process claim related to the City's grievance procedures. (ECF No. 25 at 9). Moreover, the documents Zarrelli identified as having been placed in her personnel file and shared with

third parties – namely, Underwood's Memorandum and Zarrelli's letter to the travel vendor – are administrative in nature and do not create the stigma necessary to assert a liberty interest violation or give rise to any right to a name clearing hearing. (ECF No. 22 at 6). After a thorough review and consideration of Zarrelli's allegations, as well as the reasonable inferences therefrom, the undersigned recommends Zarrelli's due process claims be dismissed.

The first step in analyzing a due process claim is determining whether the plaintiff has a liberty or property interest at stake. See Harrison v. U.S. Postal Service, 840 F.2d 1149, 1152 (4th Cir. 1988). Here, Zarrelli contends that the City violated her liberty interest by placing "professionally damaging information" into her personnel file and allegedly providing that information to prospective employers. In order to state this kind of liberty interest claim, "a plaintiff must allege that the charges against him: (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." Sciolino v. City of Newport News, 480 F.3d 642, 646 (4th Cir. 2007). In other words, when a plaintiff, denied an opportunity for a name-clearing hearing, alleges that her termination was based on "false, stigmatizing charges that are likely to be inspected by prospective

employers, [s]he states a claim that the government has deprived [her] of these liberty interests." Id. at 649.

Here, despite her contention, Zarrelli has not pled facts sufficient to indicate that the Memorandum or letter she drafted to the travel vendor placed any kind of stigma on her reputation or were otherwise false. These are the primary documents on which the Amended Complaint (like the original) relies. They specifically reference Zarrelli's alleged failure to follow office standards regarding the reservation of a rental car and Underwood's corresponding disciplinary action. Read together or separately, they fairly reflect the facts as pled in this action - specifically that Underwood believed Zarrelli violated the policy and that she disagreed. They do not accuse Zarrelli of any dishonesty, misrepresentation, or other stigmatizing conduct. See id.; Echtenkamp v. Loudon Cnty. Pub. Sch., 263 F. Supp. 2d 1043, 1056 (E.D. Va. 2003).

Zarrelli's Amended Complaint criticizes Defendants for publishing these documents in her personnel file, characterizing them as having provided "false and derogatory information related to plaintiff's work conduct, work skills, work performance, and character for truthfulness and honesty to prospective other public employers in Hampton Roads and other third parties . . . ." (ECF No. 19 at 2). She argues the publication of this "stigmatizing" information, allegedly

accusing her of "professional indiscretions, inappropriate incidences, and disrespectful conduct," impugned her "character for truthfulness, honesty, and integrity . . . ." Id. at 3, 16. However, merely describing something as "stigmatizing" does not make it so. The Court is bound to accept the facts Zarrelli alleged and draw reasonable inferences from those facts in her favor, but it is not bound by Zarrelli's descriptions, characterizations, or conclusions.

Even assuming, as Zarrelli alleges, that that information has been provided to prospective employers, "[a]llegations of incompetence do not imply the existence of serious character defects such as dishonesty or immorality . . . and are [therefore] not the sort of accusations that require a hearing." Robertson v. Rogers, 679 F.2d 1090, 1092 (4th Cir. 1982). Because these documents are essentially administrative in nature, they do not create the "stigma" necessary to prove a liberty interest violation. As such, Zarrelli's reliance on Sciolino v. City of Newport News, 480 F.3d 642 (4th Cir. 2007) and Hall v. City of Newport News, 469 F. App'x 259 (4th Cir. 2012) is misplaced.

Unlike here, the stigmatizing nature of the conduct at issue in both Sciolino and Hall was not disputed. In Sciolino, for example, the defendant was accused of "deliberately destroying city property by advancing the odometer" of his

cruiser by 10,000 miles, "ostensibly to get a new car sooner." Sciolino, 480 F.3d at 645. Hall, in turn, dealt with a defendant police officer who was accused of "untruthfulness during the course of an investigation . . . ." Hall, 469 F. App'x at 261. The allegedly dishonest conduct of both Sciolino and Hall is not at all comparable to the documents' description of Zarrelli's alleged actions in merely having violated office policy as it related to making certain travel accommodations for a third party. While instructive in different ways,[3] these two cases do not lend support to Zarrelli's arguments that the files placed in her personnel file were stigmatizing.

Additionally, Zarrelli has not alleged any violation of a property interest she may have held in her position. Zarrelli's Amended Complaint purports to assert this due process claim against both Underwood and the City. But she affirmatively alleges that only the City was her employer. (ECF No. 19 at 6). As a result, any expectation of continued employment would be with the City and Underwood could not deprive her of a property interest in any event. Nevertheless, Zarrelli failed to allege

---

[3] Indeed, the Fourth Circuit in Sciolino analyzed the requirements necessary to state a due process liberty interest claim, focusing primarily on the publicity element and ultimately establishing that "[w]hen a plaintiff alleges that his termination is based on false, stigmatizing charges that are likely to be inspected by prospective employers, he states a claim that the government has deprived him of these liberty interests." Sciolino, 480 F.3d at 649. The Hall Court analyzed whether the stigmatizing charges made against Hall were "made in conjunction with his termination or demotion," ultimately finding the ex-police officer Hall's reinstatement as a civilian employee a "significant demotion" sufficient to justify an allegation of a deprived liberty interst. Hall, 469 F. App'x at 262-63.

12

facts sufficient to state the claim against either defendant.

"To have a property interest subject to procedural due process protection, an individual must be entitled to a benefit created and defined by a source independent of the Constitution, such as state law." Huang v. Bd. of Governors of Univ. of N. Carolina, 902 F.2d 1134, 1141 (4th Cir. 1990) (citing Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972); Bradley v. Colonial Mental Health & Retardation Servs. Bd., 856 F.2d 703, 707 (4th Cir. 1988)). In the employment context, "an employee must have 'a sufficient expectancy of continued employment to constitute a protected property interest.'" Sherman v. City of Richmond, 543 F. Supp. 447, 450 (E.D. Va. 1982)(quoting Bishop v. Wood, 426 U.S. 341, 344 (1977)).

As the record reflects, and as the Norfolk Circuit Court determined when considering the question directly, Zarrelli was a special project employee. As such, she served at the pleasure of the City Manager, had no grievance rights with regards to her termination and no resulting due process protection for continued employment. Zarrelli has not disputed this straight forward application of precedent. Instead, she claims that she was not a special project employee, or alternatively, that the City's classification of "special project" employees itself denied her due process.

Zarrelli's contention "does not survive a review of the

13

facts of her claim." (ECF No. 1-12 at 5). As the Norfolk court has already observed, "[s]he was employed under the provisions of City Ordinance No. 44,348 that accepted grant funding for nine special project positions in the Victim/Witness Assistance Program[,] [and] [h]er personnel records are consistent in classifying her as a special project employee." Id. As such, she served "at the will of the city manager," Norfolk, Va., Code § 2.1-21, and was "not . . . entitled to utilize the city's grievance procedure unless expressly provided otherwise . . . ." Norfolk, Va., Code § 2.1-22.

In her original briefing, and again in support of the Amended Complaint, Zarrelli argues that the Norfolk Court incorrectly determined her status. She argues this Court should examine her statutory arguments again and reach a different conclusion. But Zarrelli's expectation of continued employment must be defined by state law. Accordingly, the state court's prior contested determination establishes that she did not have a reasonable expectation of continued employment with the Victim/Witness Program, and accordingly, lacked a constitutionally cognizable property interest in that position. It bears mention, too, that Zarrelli's appeal to the Circuit Court involved a contested proceeding before a Court of Record,

during which she was represented by counsel.[4]

Notwithstanding the Norfolk court's findings, Zarrelli contends that the City violated her substantive due process rights by classifying certain employees as "special project" employees in the first place. This classification, she argues, effectively created a class of employees with limited grievance rights, lacks any rational basis, and is arbitrary and capricious. The City argues that even if this type of employment classification were subject to equal protection analysis, the Virginia General Assembly's grant of authority to the City to create "special project" employees is facially rational.

Substantive due process "'provides heightened protection against government interference with certain fundamental rights and liberty interests.'" Troxel v. Granville, 530 U.S. 57, 66 (2000) (quoting Washington v. Glucksberg, 521 U.S. 702, 719 (1997)). Fundamental rights and liberties have been described as those that are "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." Glucksberg, 521 U.S. at 721 (citations omitted). Any law interfering with a fundamental right must be "narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S.

---

[4] Moreover, pursuant to Virginia Code § 15.2-1507(A)(9)(b), the decision of that court is "final and is not appealable."

292, 302 (1993). "Substantive due process claims not involving a fundamental right are reviewed under the rational basis test." Bon Supermarket & Deli v. United States, 87 F. Supp. 2d 593, 604 (E.D. Va. 2000). Accordingly, these kinds of classifications "cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Heller v. Doe, 509 U.S. 312, 320 (1993).

Here, Zarrelli has not alleged any violation of a fundamental right, and indeed, the Supreme Court has held that the right to governmental employment is not per se fundamental. See Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 313 (1976). Additionally, "a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity." Heller, 509 U.S. at 319. In fact, "a legislature that creates [differing categories] need not 'actually articulate at any time the purpose or rationale supporting its classification.'" Id. at 320 (quoting Nordlinger v. Hahn, 505 U.S. 1, 15 (1992)).

Against this established precedent, Zarrelli's claim is conclusory, merely stating that the City's classification of "special project" employees is unconstitutional. She has not alleged any reasons why the "special project" designation is arbitrary. To the contrary, as the City observes, segregating

16

city employees who work under the direction of elected constitutional officers and receive state-funded compensation is entirely rational. Accordingly, Zarrelli does not plausibly allege any kind of equal protection claim. For this reason, and because Zarrelli has not pled facts sufficient to establish any constitutionally cognizable liberty or property interests, the undersigned recommends Zarrelli's constitutional claims against both Defendants be dismissed.

## II. Defamation

Zarrelli also argues that Underwood's requirement that she draft a letter to the travel vendor admitting "wrongdoing and improper conduct on her part," as well as the publication of this information in her personnel file, constituted defamation per se.[5] (ECF No. 19 at 21-22). She claims this requirement damaged her professional integrity and hindered her ability to obtain employment since that information has allegedly been provided to prospective employers. Additionally, Zarrelli now suffers from an "inability to state the grounds to prospective employers of the reasons why her longtime employment with [D]efendant[s] came to an abrupt end in 2012." Id. at 22.

To bolster her defamation claim at oral argument, Zarrelli referenced an e-mail between one of Underwood's associates and

---

[5] Zarrelli's Amended Complaint now specifies CI Travel Agency and Kathy Lancaster as the recipients of the allegedly defamatory letter she drafted at Underwood's direction. However, the substance of the allegedly defamatory statements remains virtually identical to her original complaint.

various other City personnel.   The e-mail outlined a meeting
between   Zarrelli   and   Underwood   that   occurred   following
Zarrelli's   return   from   FMLA   leave.    (ECF   No.   1-7).    In
pertinent part, it reads:

> Greg asked that I update you on Regina Zarrelli's return
> today from her FMLA absence.
>
> * * * *
>
> At 4:30pm today, Greg met with Regina in his office . . .
> . Greg reminded Regina that her disciplinary action which
> was pending prior to her FMLA absence still needed to be
> carried out. The disciplinary action has 2 parts: 2 days
> leave without pay, letter of apology, and probationary
> employment status effective 5/3/12. She said she had a
> copy of the disciplinary action. He also said he was
> aware she wanted to follow the grievance procedure and
> that she'd waived the first step . . . . Greg asked
> Regina whether she had any questions – she didn't. The
> meeting ended.

(ECF No. 1-7).

   Upon   review,   the   e-mail   is   essentially   a   minute-entry,
outlining   what   transpired   during   the   meeting   –   an   objective
recitation   of   the   pending   disciplinary   action.    During   oral
argument,   Zarrelli   argued   that   this   e-mail   suggests   malice
because   it   publishes   improper   information   to   unnecessary
employees.   According   to   the   City,   however,   and   not   refuted   by
Zarrelii's   counsel,   the   individuals   copied   on   the   e-mail   were
necessary   parties   to   Zarrelli's   discipline,   and   therefore   not
"unnecessary" employees.

   The City, as it did in response to the original complaint,

18

counters that it is protected by a qualified privilege as between an employer and prospective employer. Likewise, Underwood claims the same privilege. Because Zarrelli has not alleged the requisite malice needed to overcome that privilege, Defendants assert that she has failed to state a claim for which relief can be granted. (ECF Nos. 22 at 8 and 25 at 14-17). For the following reasons, the undersigned agrees with Defendants.

In Virginia, "a plaintiff seeking to recover for defamation per se must allege a publication of false information concerning the plaintiff that tends to defame the plaintiff's reputation." Hatfill v. New York Times Co., 416 F.3d 320, 330 (4th Cir. 2005) (citing Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1092 (4th Cir. 1993); The Gazette, Inc. v. Harris, 229 Va. 1, 325 S.E.2d 713 (1985)). Specifically, "plaintiff must show (1) publication, (2) of an actionable statement with (3) the requisite intent." Katz v. Odin, Feldman & Pittleman, P.C., 332 F. Supp. 2d 909, 922 (E.D. Va. 2004) (citing Chapin, 993 F.2d at 1092). Whether a statement is actionable as defamatory is a question of law to be decided by the court. Id.; see also Hatfill, 416 F.3d at 330.

In Virginia, a false statement is not, in and of itself, "actionable." That statement must also be defamatory. As the Fourth Circuit has held, to be defamatory, the statement must "tend[] so to harm the reputation of another as to lower him in

the estimation of the community or to deter third persons from associating or dealing with him." Chapin, 993 F.2d at 1092 (citation omitted). "Merely offensive or unpleasant statements" do not suffice. Id. "[R]ather, defamatory statements 'are those that make the plaintiff appear odious, infamous, or ridiculous.'" Echtenkamp v. Loudon Cnty. Pub. Sch., 263 F. Supp. 2d 1043, 1061 (E.D. Va. 2003)(quoting Chapin, 993 F.2d at 1092).

Additionally, "'speech which does not contain a provably false factual connotation, or statements which cannot reasonably be interpreted as stating actual facts about a person cannot form the basis of a common law defamation action.'" Id. (quoting Yeagle v. Collegiate Times, 255 Va. 293, 295, 497 S.E.2d 136 (1998)). Finally, for a statement to be defamatory per se, it must (1) impute the commission of a crime of moral turpitude; (2) impute that the person is infected with a contagious disease; (3) impute an unfitness or lack of integrity to perform the duties of a job; or (4) prejudice the party in her profession. Id.

Under these standards, this Court in Echtenkamp held that the following statements in one employer-setting did not rise to the level of actionable defamation:

> (i) Statements that plaintiff inappropriately acted during a
> student-counseling group by "insulting" and "contradicting"
> colleagues.

(ii) Statements that plaintiff was "inept" in handling a situation between two disabled students returning to a classroom.

(iii) Statements that plaintiff must be more accepting of others' opinions and that many colleagues consider her to be "manipulative and defensive."

Id. at 1063-65.   These statements were not defamatory because "they cannot be construed to imply that plaintiff is unfit for or lacks integrity in performing her duties or to prejudice plaintiff in her profession, nor are they severe enough to make plaintiff appear odious, infamous, or ridiculous . . . ."   Id. at 1063.

Applying this standard to the allegedly defamatory statements made about Zarrelli, she has not plausibly alleged a claim of defamation under Virginia law.   In her case, the allegations of defamation depend on whether her employer's files falsely portrayed her in a damaging light.   As alleged in her Amended Complaint and at oral argument, these files contain the Underwood Memorandum, her letter response, and the post-FMLA e-mail, none of which impugn her integrity or fitness for the position.   At most they reveal her disagreement with Underwood about the rental car policy, and subsequent refusal to follow his direction - facts which she does not contest.

At oral argument, Zarrelli's counsel suggested that the documents could be read to accuse Zarrelli of financial

impropriety in trying to assist a victim or potential witness in
obtaining reimbursement for a rental car which was not
authorized by City policy.  It is hard to see how anyone reading
the documents would reach this conclusion.  Nevertheless, even
with the benefit of counsel's contextual explanation (not
apparent from the documents), the undersigned still finds
nothing defamatory in the cited records.  Whether the rental car
should or should not have been reimbursed for the traveler is
completely tangential to the dispute between Zarrelli and
Underwood.  Instead, he reprimanded and eventually terminated
her because she refused to follow the explicit direction of
those on his staff charged with implementing the policy, and
then compounded the problem by preparing a dismissively
insubordinate letter for a third party.

Finally, because both the City's and Underwood's alleged
statements are protected by a qualified privilege, even if the
statements were defamatory, Zarrelli has not alleged an
actionable claim.  Virginia recognizes a qualified privilege in
the context of an employment relationship.  See Ortiz v. Panera
Bread Co., No. 1:10CV1424, 2011 WL 3353432, at *4 (E.D. Va. Aug.
2, 2011).  The privilege arises "when the statement is made
between persons on a subject in which they have an interest or
duty."  Id. (citing Union of Needletrades, Indus. & Textile
Emps. v. Jones, 268 Va. 512, 603 S.E.2d 920, 924 (2004)); see

22

also, Larimore v. Blaylock, 259 Va. 568 (2000). It extends to communications between employers - or the employer's "proper representatives" - discussing former employees with prospective employers, and is only overcome by a showing of malice. Id. at *4-*5; Larimore, 259 Va. at 573 (quoting Chesapeake Ferry Co. v. Hudgins, 155 Va. 874, 906-07 (1931)).

In Virginia, the malice "sufficient to overcome a qualified privilege is 'behavior actuated by motives of personal spite, or ill-will, independent of the occasion on which the communication was made.'" Fuste v. Riverside Healthcare Ass'n, Inc., 265 Va. 127, 134-35, 575 S.E.2d 858, 863 (2003) (quoting Gazette, Inc. v. Harris, 229 Va. 1, 18, 325 S.E.2d 713, 727 (1985)). In other words, to avoid application of this privilege, "plaintiff must show that 'the communication was actuated by some sinister or corrupt motive such as hatred, revenge, personal spite, ill will, or desire to injure the plaintiff.'" Echtenkamp, 263 F. Supp. 2d at 1062.

Here, Zarrelli's Amended Complaint has not specifically alleged the City or Underwood, Zarrelli's supervisor and the City's "proper representative" acted with "malice." Though she does state in a conclusory fashion that Underwood intended to harm her reputation, the Amended Complaint contains no facts to support a claim that either Defendant harbored any "ill will" or "personal spite" against her. Additionally, Zarrelli contends

that at one point her superior Underwood "berated" and "scolded" her in front of her co-workers about the original grievance she filed against him.   But the only facts supporting these allegations are the Memorandum and e-mails regarding her discipline, none of which reflect anything other than appropriate error correction by a supervisor.   Accordingly, Zarrelli's Complaint does not allege a factual basis which would raise a suggestion of malice above the speculative level. Therefore, the undersigned recommends this claim be dismissed.

## RECOMMENDATION

For the foregoing reasons, the undersigned finds that Zarrelli has not alleged facts sufficient to plausibly establish her claims for relief, and therefore recommends the Court GRANT the Defendants' Motions to Dismiss.

## REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.   Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.   A party may respond to another party's objections within fourteen (14) days after being served

with a copy thereof.

2.   A district judge shall make a _de novo_ determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.   _Thomas v. Arn_, 474 U.S. 140 (1985); _Carr v. Hutto_, 737 F.2d 433 (4th Cir. 1984); _United States v. Schronce_, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

May 22, 2014